UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRACEY DODD | * | CIVIL ACTION NO. 20-3231 |
| | * | |
| VERSUS | * | JUDGE |
| | * | |
| J.S. HELD, LLC | * | MAG. JUDGE |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \*

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Tracey Dodd (hereinafter referred to as "Dodd"), who respectfully alleges as follows:

1.

Plaintiff, Tracey Dodd is a citizen of the State of Louisiana and a resident of Orleans Parish.

2.

Made defendant herein is J.S. Held, LLC, (hereinafter referred to as "Held"), a Delaware Limited Liability Company that is a citizen of the State of New York because each of its Members is a citizen of the State of New York.

3.

According to the Records from the Louisiana Secretary of State, Held's Members are Russell Polin and J.S. Held Holdings, LLC ("JSH Holdings"), both New York citizens located in Jericho, New York with a mailing address of 50 Jericho Quadrangle, Suite 117, Jericho, New York 11753.

1

4.

Held is registered with the Louisiana Secretary of State as a foreign Limited Liability Company that is registered to do business within the State of Louisiana with a principal place of business located in East Baton Rouge Parish at 3867 Plaza Tower Drive, 1st Floor, Baton Rouge, Louisiana 70816 with a local office located in New Orleans, Louisiana.  Held's Registered Agent is Incorp Services, Inc. who can be served at 3867 Plaza Tower Drive, 1st Floor, Baton Rouge, Louisiana 70816.

5.

This Court has diversity jurisdiction over this claim pursuant to 28 U.S.C.A. § 1332 as Dodd is a citizen of the State of Louisiana and Held is a citizen of the State of New York, and the amount in controversy exceeds $75,000.00.

6.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) as both Dodd and Held do business in the State of Louisiana, and the events giving rise to this Complaint occurred within the Eastern District of Louisiana.

7.

Dodd was the founder and owner of U.S. Health and Environmental Liability Management, LLC ("U.S. HELM").

8.

U.S. HELM was a consulting firm who was a national leader in environmental risk assessment, corrective action, industrial hygiene, safety and environmental consulting.

9.

Held is a global consulting firm that provides specialized technical, scientific, financial and advisory services to clients in a wide range of industries.

10.

In September of 2016, Held acquired substantially all of the assets of U.S. HELM from Dodd and her co-owner, Tom Sumner, and operated the acquired entity as the "Health and Environmental Services" business practice group of Held.

11.

The Health and Environmental Services business practice group provided rapid response onsite services, environmental risk management, insurance and litigation support, property analysis, vulnerability assessments, and other services that minimize corporate liability concerns to Held's client base.

12.

Held acquired substantially all of the assets of U.S. HELM for consideration that included a direct cash payment and equity consisting of the issuance of units of J.S. Held Management LLC to Dodd and Sumner.

13.

As part of Held's acquisition of U.S. HELM, Dodd and J.S. Held Management LLC executed a J.S. Held Management LLC Equity Incentive Plan Restricted Incentive Unit Grant Agreement dated September 29, 2016. (Hereinafter referred to as the "Grant Agreement")[1]

---

[1] The J.S. Held Management LLC Equity Incentive Plan Restricted Incentive Unit Grant Agreement dated September 29, 2016 is attached as Exhibit #1.

14.

The Grant Agreement provided Dodd with 262,774 Class B Common Units of J.S. Held Management LLC with a grant date of September 29, 2016 and a grant date fair market value of $1.37 per unit.

15.

The Grant Agreement provided that the Class B Units would vest over a five (5) year period.

16.

On September 29, 2016, Dodd and Held entered into an Employment Agreement wherein the parties agreed to the terms and conditions of Dodd's employment with Held (the "Original Employment Agreement").

17.

Dodd began her employment with Held and dutifully performed her obligations pursuant to the Original Employment Agreement.

18.

JSH Holdings (the member of Held) and an investment firm affiliated with Kelso & Company merged on May 16, 2019 pursuant to a Securities Purchase Agreement and Plan of Merger (the "Merger Agreement") by and between JSH Holdings and an investment firm affiliated with Kelso & Company, wherein JSH Holdings was acquired by an investment fund affiliated with Kelso & Company (the "Transaction").

19.

In accordance with to the terms of the Merger Agreement and the J.S. Held Management LLC Equity Incentive Plan, Dodd's vested Units (the previous Class B Common Units that she received as a result of the U.S. HELM transaction) were replaced as of the closing date of the Transaction with units which were issued by Watchtower Management Holdco, LLC ("Watchtower").

20.

Watchtower is an entity established by Kelso's investment fund to facilitate employee investment in JSH Holdings after the Transaction.

21.

Jon Held sent Dodd a memorandum outlining the unit transfer with Watchtower reporting that Dodd's 157,664 units with a Total Closing Date Value of $1,361,249, would be converted to 1,361,249 Restricted Common Units with Watchtower.[2]

22.

To perfect the transfer, Dodd and Watchtower entered into an Investor Exchange Agreement dated July 15, 2019.

23.

Dodd and Watchtower entered into a Restricted Incentive Unit Grant Agreement for 250,000 Operating Units and 750,000 Value Units of Management, dated as of July 15, 2019 (the "Watchtower Grant Agreement").

---

[2] A copy of the Jon Held's June 25, 201 Memorandum is attached as Exhibit #2.

24.

Dodd continued her employment with Held after accepting the Watchtower Grant Agreement.

25.

On September 25, 2020, Dodd and Held entered into an Employment Agreement wherein the parties agreed to the terms and conditions of Dodd's continuing employment with Held (the "September Employment Agreement").[3]

26.

The September Employment Agreement replaced the Original Employment Agreement that was dated September 29, 2016.

27.

Dodd provided notice of her resignation in conformance with the requirements of the Employment Agreement to Held, and her final day of employment with Held was November 18, 2020 (the "Termination Date").

28.

Section 1(a) of the September Employment Agreement provides that "During the Term, the Company hereby agrees to continue to employ Employee, … as Executive Vice President for the Company, … Employee shall report directly to the Chief Executive Officer of the Company (the 'CEO') or his designee(s)."

29.

Section 1(e) of the September Employment Agreement guaranteed Dodd a position on the company's diversity committee by stating:

---

[3] A copy of the September 25, 2020 Employment Agreement is attached as Exhibit #3.

(e) The Company has a Diversity and Inclusion Council (the "Council") which Council is currently chaired by the CEO. Employee shall report to the chair of the Council for all matters relating to the Council and Employee shall be a member of the Council. The Employee shall work with the chair of the Council and its members to develop goals and criteria that are consistent with the Company's continuing promotion of an inclusive and diverse workplace environment.

30.

Section 2(a) of the September Employment Agreement provides that Dodd can terminate her employment with Held by providing two weeks' notice.

31.

Section 2(a) states:

(a) This Agreement and Employee's employment are effective as of the date hereof and shall continue until terminated by either party in accordance with the terms and conditions set forth herein (the "Term"). Notwithstanding anything to the contrary contained herein, Employee's employment with the Company may be terminated by the Company or Employee for any reason or no reason at all, with or without Cause, and without prior notice provided that Employee shall provide the Company with two weeks' notice of any termination subject to the provisions contained herein.

32.

The September Employment Agreement classifies termination from the company as being for Good Reason or not for Good Reason.

33.

The Employment Agreement defines Good Reason as follows:

(d) "Good Reason" shall mean the following actions by the Company (i) a material adverse alteration in the nature or status of the Employee's title, duties, or responsibilities, the assignment of duties or responsibilities, or a reduction in Employee's Base Salary; in each case inconsistent with similarly situated employees in comparable roles; (ii) the relocation of Employee's primary office by Company to any place exceeding a distance of twenty-five (25)

7

miles from the Employee's office at the time this Agreement was executed, except for voluntary moves by Employee or allowing the Employee to work remotely, or reasonably required travel by the Employee on the Company's business; or (iii) any material breach by the Company of any provision of this Agreement that remains uncured after delivery of written notice to the Company within thirty (30) days of any such breach and a period of thirty (30) days for Company to cure such breach.

34.

Dodd's termination was for Good Reason because she experienced "a material adverse alteration in the nature or status of the Employee's title, duties, or responsibilities, the assignment of duties or responsibilities, or a reduction in Employee's Base Salary; in each case inconsistent with similarly situated employees in comparable roles" when she was discriminated against due to her gender including the modification of duties, assignments, management responsibilities and compensation, making her ability to continue with her employment impossible and untenable.

35.

Dodd's work duties, requirements and workload exceeded those of comparable Held managers, all of which were male.

36.

These additional duties were by John Held when he told Dodd in September 2020, "TracEy, I expect more from you than the others."

37.

Further, Dodd's termination was for Good Reason because Held has breached the September Employment Agreement for requiring Dodd to report to her replacement (which replacement is a male) even though during the negotiation of the September Employment Agreement Dodd was assured that she would not have to report to her replacement.

38.

Dodd's reporting replacement was not qualified to serve as her supervisor as he has little to no insurance experience, which is the core of Dodd's business, and Held's environmental, health and safety practice line and has no industrial hygiene or toxicology experience, Dodd's line of expertise.

39.

This reporting change was issued as retaliation against Dodd for her taking a position contrary to John Held at Held's Diversity and Inclusion Council meeting where Dodd took a contrary position to that of Jon Held.

40.

The reporting change was issued within one hour of the conclusion of the Diversity and Inclusion Council meeting where Dodd took a contrary position to that of Jon Held.

41.

Scott Katcher, Held's General Counsel, admitted to Dodd, in front of two witnesses, at 3:00pm on November 4, 2020 that Held had violated the terms of the Employment Agreement and that Dodd was negotiating in good faith.

42.

The September Employment Agreement provides that Held must pay Dodd the fair market value for the units that she holds at the Termination Date.

43.

Section 2(h) of the September Employment Agreement provides that Held must purchase all units, whether vested or not, if Dodd's separation from Held is for Good Reason.

44.

Section 2(h) states:

> Further, upon a termination of this Agreement by the Company
> without Cause or by the Employee for Good Reason, (i) any and all
> unvested Restricted Common Units shall immediately vest; and, (ii)
> the Company shall effectuate the purchase any and all vested
> Common Units owned by the Employee for the Fair Market Value
> of such Common Units.

45.

Section 2(i) of the September Employment Agreement provides that Held must purchase

all vested units if Dodd's separation from Held is not for Good Reason.

46.

Section 2(i) of the September Employment Agreement states:

> Upon the termination of this Agreement by the Company for Cause
> or by the Employee without Good Reason, there shall be no
> acceleration of unvested units and the Company shall effectuate the
> purchase any and all vested Common Units owned by the Employee
> as of such date for the Fair Market Value of such Common Units.

47.

Upon termination of her employment, Dodd requested, pursuant to Section 2 of the

September Employment Agreement, that Held immediately redeem the Held units that she

currently possesses.

48.

Held has refused to redeem the units unless Dodd executed an extremely broad and

unilateral release that, among other things, waives any and all claims that Dodd has against Held.

49.

The execution of a release is not required for the redemption of units pursuant to Section 2 of the September Employment Agreement.

50.

Held is wrongfully withholding payment for the units to force Dodd into releasing any employment, gender discrimination or harassment claims that she has against Held.

51.

As the Employment Agreement calls for the immediate redemption of units upon termination, Held is wrongfully refusing to provide Dodd with this earned compensation, which was a result of the hard work and efforts that she put into U.S. HELM, since these units were granted to Dodd in accordance with the sale of the assets of U.S. HELM to Held.

52.

As a result of Held's failure to perform its obligations upon the termination of the Dodd/HELM relationship, Dodd has sustained significant damages.

53.

Held's General Counsel and head of Human Resources admitted to Dodd, in front of two witnesses, on November 4, 2020 that Held breached the Employment Agreement.

## **COUNT I – FAILURE TO PERFORM/ BREACH OF CONTRACT**

54.

Dodd realleges and incorporates by reference all prior allegations contained in this Complaint.

55.

The essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages.

56.

The September Employment Agreement created a valid contract between Dodd and Held that required Held to purchase Dodd units immediately upon the termination of the employment relationship.

57.

Dodd's termination of employment was for a Good Reason pursuant to the September Employment Agreement as she suffered continuing systemic gender discrimination, harassment, retaliation, intimidation and other workplace hostilities, she is entitled to the immediate payment for all units, both vested and unvested.

58.

If Dodd's termination of employment was not for Good Reason, she is entitled to receive immediate payment for the redemption of her vested units.

59.

Dodd has amicably demanded that Held immediately pay her for the redemption of her units.

60.

Held has acknowledged that the payment for the redemption of the units is warranted pursuant to the September Employment Agreement.

61.

Held has refused to issue said payment until Dodd executes a unilateral, overly broad, full release that releases Held from any and all claims that could be asserted by Dodd, including the claims that she has for gender discrimination, harassment, workplace intimidation, etc.

62.

The September Employment Agreement does not include any provision that mandates the signing of a release prior to the redemption of units.

63.

Held's actions constitute breaches of the September Employment Agreement and have caused Dodd significant economic damages including, but not limited to, the loss of funds invested in Held, interest on said funds, lost business opportunities, damage to reputation, investment expenses, attorneys' fees/costs, lost profits, and other economic damages.

64.

Dodd is entitled to recover her economic losses due to Held's breach of the September Employment Agreement for failing to pay Dodd the compensation required for the redemption of the units.

65.

Held is liable to Dodd for Held's failure to perform a conventional obligation or contract pursuant to Louisiana Civil Code Article 1906, *et seq.*

66.

Held is in bad faith as they have intentionally and maliciously failed to perform their contractual obligations, and intentionally violated the September Employment Agreement.

67.

Pursuant to Louisiana Civil Code Articles 1994, 1995, 1997 and 2642, Held is liable for all damages sustained, whether foreseen or not, due to their failure to perform pursuant to the terms of the September Employment Agreement.

68.

Dodd has sustained economic damages as a result of Held's breach of the September Employment Agreement.

69.

As a result of Held's breach of contract/failure to perform pursuant to the September Employment Agreement, Dodd is entitled to payment of the full amounts due, damages, specific performance, interest, costs and attorneys' fees.

70.

In addition to economic damages, pursuant to Louisiana Civil Code Article 1986, Dodd is entitled to the specific performance of the terms of the September Employment Agreement.

71.

Specific performance of the September Employment Agreement obligates Held to redeem 100% of the units by paying Dodd fair market value as of the Termination Date.

## COUNT II – DETRIMENTAL RELIANCE

72.

Dodd realleges and incorporates by reference all prior allegations contained in this Complaint.

73.

Dodd proceeded with the sale of substantially all of the assets of U.S. HELM to Held by accepting an initial cash payment and the acquisition of units in Held based upon Held's representation that said units would be redeemed by Held at the market rate upon Dodd's termination of employment.

74.

If not for the representations made by Held, Dodd would not have agreed to sell the assets of U.S. HELM to Held and accepted the position as an employee of Held.

75.

As Dodd transferred her ownership in U.S. HELM to Held and worked diligently as an employee for Held, Held was aware that Dodd was clearly relying on Held's representations when she executed the agreements needed to transfer her interests in U.S. HELM in return for units in Held and moved forward with the closing of the transaction.

76.

Dodd's reliance upon the representations and assurances made by representatives of Held was reasonable as Held allowed Dodd to take the actions necessary to transfer her interests in U.S. HELM to Held.

77.

Held is barred from now taking a position contrary to their prior acts, admissions, representations or silence.

78.

As a direct and proximate result of Dodd's detrimental reliance on Held's representations, Dodd has suffered substantial economic losses and other damages.

## **COUNT III – CONVERSION**

79.

Dodd realleges and incorporates by reference all prior allegations contained in this Complaint.

80.

An act of conversion is committed when possession is acquired in an unauthorized manner, possession is withheld from the owner or possessor, or ownership is asserted over property.

81.

Any wrongful exercise or assumption of authority over another's property, depriving him of the possession, permanently or for an indefinite time, is a conversion.

82.

The September Employment Agreement provided that Held would redeem Dodd's units at fair market value upon her termination of employment.

83.

Although Held is obligated to immediately compensate Dodd for the redemption of her Units upon termination, despite amicable demand, Held has refused to comply with the terms of the Employment Agreement and compensate Dodd for the redemption of her shares.

84.

As Held has refused to comply with the terms of the September Employment Agreement and compensate Dodd for the redemption of her shares, Held is liable for conversion.

85.

Held's refusal to immediately compensate Dodd for the redemption of her units upon termination is a wrongful exercise or assumption of authority over the property of Dodd.

86.

As such, Held is liable to Dodd for the tort of conversion as they have intentionally deprived Dodd from receiving the funds she is entitled to receive from the redemption of her units.

87.

As a result of Held's conversion of Dodd's funds, Dodd is entitled to payment of the full amounts due, damages, general non-pecuniary damages, interest, costs and attorneys' fees.

## COUNT IV – FRAUD

88.

Dodd realleges and incorporates by reference all prior allegations contained in this Complaint.

89.

La. C.C. art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

90.

Based upon Held's representations, Held has committed fraud by misrepresenting the truth regarding Held's intent to redeem Dodd's units in Held for market value upon her termination from the company.

91.

Dodd has sustained economic damages as a result of the Held's fraudulent actions.

92.

As a result of Held's fraud, Dodd is entitled to payment of the full amounts due, damages, interest, costs and attorneys' fees.

## COUNT IV – BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

93.

Dodd realleges and incorporates by reference all prior allegations contained in this Complaint.

94.

Louisiana Civil Code Articles 1759, 1983 and LSA-R.S. 10:1-304, imply into every contract a covenant of good faith and fair dealing. That covenant imposes upon each party to the contract a duty at all times to act in good faith and to deal fairly with the other party, including with respect to the performance and termination of said contract.

95.

To act in good faith and to deal fairly, the parties at all times must act honestly toward each other when performing their contract. When one party engages in an action that has the effect of destroying or injuring the rights of the other party to receive the fruits of its contract, that party has breached its duty.

96.

The duties of good faith and to deal fairly are implied into every contract by law, including employment, sale and investment agreements.

97.

Held's actions and conduct were demonstrably unreasonable, were undertaken in abject bad faith, and constitute an elementary and fundamental breach of the covenant of good faith and fair dealing implied by law.

98.

As a direct and proximate result of Held's breach of the implied covenant of good faith and fair dealing, Dodd has suffered substantial economic losses and other damage to her business, reputation and customer goodwill, including, but not limited to, lost sales, investment revenue, additional expenses and profits.

## DAMAGES

99.

Due to Held's failure to perform their obligations pursuant to the September Employment Agreement, their respective breaches of contract, conversion of funds, and fraud, Dodd seeks a determination that Held has committed fraud and conversion, has breached the terms of their agreements, and is in default of their obligations to pay Dodd her respective investments and profits related to the sale of U.S. HELM to Held and her continuing employment with Held.

100.

Dodd demands its compensable damages consisting of, but not limited to:

(a)     The immediate payment for the redemption of 100% of Dodd's units at market value as determined on the day of her termination of employment;

(b)     Reimbursement for all economic damages sustained by Dodd as a result of Held's breach of the Employment Agreement;

(c)     Interest on the amount due;

(d)     A declaration that the Employment Agreement is a nullity;

(e)     Attorneys' fees;

(f)     Costs associated with litigating this matter;

(e)     Dodd's lost business opportunities;

(f)      Dodd's lost profits;

(g)      Inconvenience and aggravation; and

(h)      Any other element of damage proved during the trial of this matter.

**WHEREFORE,** the premises considered, Plaintiff, Tracey Dodd, prays:

1.   That process and due form of law issue from this Court and be served upon Defendant, J.S. Held, LLC, citing them to appear and answer the Complaint;

2.   That after due proceedings be had, Tracey Dodd have judgment herein entered in her favor and against J.S. Held, LLC, in the full amount of its damages aforesaid, plus all costs, interest, pre-judgment interest and attorneys' fees; and

3.   That Tracey Dodd may have all such other relief as equity and the justice of this cause may require and permit.

RESPECTFULLY SUBMITTED:

**MILLER, SULLIVAN & DEMARCAY, LLC**

**LAWRENCE R. DeMARCAY, III (25379), T.A.**
1100 Poydras Street, Suite 1515
New Orleans, LA  70163
Telephone: (504) 708-1268
Fax: (504) 708-1398
lrd@msdnola.com
*Attorneys for Plaintiff, Tracey Dodd*

Please issue Summons to:
J.S. Held, LLC's Registered Agent for Service of Process
Incorp Services, Inc.
3867 Plaza Tower Drive
1st Floor
Baton Rouge, Louisiana 70816